UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISH NETWORK L.L.C., Plaintiff, - against - IDRISS ELKASMI (a/k/a IDRISS EL-KASMI), MAKREM SALEM, BOUZIANE EL HARCHAOUI, ALI EZZAARY, and DOES 1-10, Defendants. | Case No. 1:26-cv-01350-MKV |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

Robert D. Balin
Adam I. Rich
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
Tel. 212.489.8230
Email: robbalin@dwt.com
adamrich@dwt.com

*Attorneys for Plaintiff DISH Network L.L.C.*

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

A. The Parties .......... 2

B. DISH's Copyrights .......... 2

C. The Infringing Service .......... 3

D. DISH's Investigation .......... 5

E. Defendants' Willfulness and Actual Knowledge of Infringement .......... 6

F. This Lawsuit .......... 7

ARGUMENT .......... 8

I. DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS .......... 8

A. Standard for Default Judgment .......... 8

B. Defendants Are Directly Liable for Copyright Infringement .......... 9

1. DISH's Ownership Interest Is Sufficiently Pleaded 9

2. Defendants Directly Infringed DISH's Exclusive Rights 11

II. DISH SHOULD BE AWARDED MAXIMUM STATUTORY DAMAGES .......... 12

A. Defendants' Infringement Was Indisputably Willful .......... 13

B. The Other Relevant Factors Favor Awarding Maximum Statutory Damages .......... 14

1. Expenses Saved and Profits Reaped by Defendants 14

2. DISH's Losses 15

3. Value of the Copyrights 16

4. Deterrent Effect on Defendants and Other Infringers 16

5. Defendants Failed to Provide Records 17

C. Damages Sought in This Case .................................................................. 17

III. DISH IS ENTITLED TO A PERMANENT INJUNCTION ........................................... 18

A. DISH Has Suffered Irreparable Injury .......................................................... 19

B. The Balance of Hardships and Public Interest Favor an Injunction ..................... 20

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agence Fr. Presse v. Morel*,
No. 10–cv–2730 (AJN), 2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) ....15

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
714 F.2d 1240 (3d Cir. 1983)....20

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)....11

*Asia TV USA Ltd. v. Kamran Int'l Trade Ltd.*,
No. 17-cv-5057 (FB), 2018 WL 6313215 (E.D.N.Y. Sept. 25, 2018), *report and recommendation adopted*, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018) ....15

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016)....16

*Cadlerock Joint Venture, L.P. v. Prado*,
No. 07-CV-1207 (JS)(WDW), 2008 WL 4561611 (E.D.N.Y. Oct. 7, 2008) ....8

*Chiykowski v. Goldner*,
No. 19-cv-2272 (AJN), 2020 WL 2834225 (S.D.N.Y. May 31, 2020) ....10

*Columbia Pictures Indus., Inc. v. Cap King*,
No. 08-CV-4461, 2010 WL 1221457 (E.D.N.Y. Mar. 29, 2010)....8

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001) ....13

*Cotton v. Slone*,
4 F.3d 176 (2d Cir. 1993)....8

*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)....8

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007)....9

*DISH Network L.L.C. v. 786 Wireless World, Inc.*,
No. 21 CV 5730 (AMD)(RML), 2024 WL 708229 (E.D.N.Y. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 1092498 (E.D.N.Y. Mar. 13, 2024) .... *passim*

*DISH Network L.L.C. v. 786 Wireless World, Inc.*,
No. 21-CV-5730-AMD-RML, Dkt. 64 (E.D.N.Y. Mar. 13, 2024) ....18

*DISH Network, L.L.C. v. Dima Furniture*,
No. TDC-17-3817, 2019 WL 2498224 (D. Md. June 17, 2019),
*report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019)...........15, 20

*DISH Network L.L.C. v. Khalid*,
Civil Action H-19-4563, 2021 WL 765709 (S.D. Tex. Feb. 23, 2021)....................................2

*DISH Network L.L.C. v. Kumar*,
No. 21-CV-6730(JPO), 2022 WL 5108085 (S.D.N.Y. Oct. 4, 2022)...........................2, 13, 18

*DISH Network L.L.C. v. Massive Wireless, Inc.*,
2026 WL 1674131 (E.D.N.Y. June 9, 2026) .............................................................14, 16, 19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...........................................................................................................19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)...........................................................................................................11

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
807 F.2d 1110 (2d Cir. 1986)......................................................................................12, 13

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
826 F. Supp. 2d 619 (S.D.N.Y. 2011)...........................................................................13, 14

*Langenberg v. Sofair*,
No. 03 Civ. 8339(KMK) (FM), 2006 WL 3518197 (S.D.N.Y. Dec. 7, 2006) ..........................8

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
658 F.3d 936 (9th Cir. 2011) ...............................................................................................13

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*,
No. 89 Civ. 6082RWS (KAR), 1991 WL 113283 (S.D.N.Y. June 14, 1991),
*aff'd*, 954 F.2d 847 (2d Cir. 1992)........................................................................................16

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
131 F. Supp. 2d 458 (S.D.N.Y. 2001)...................................................................................13

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005).......................................................................................................9

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015)......................................................................................13

*Tu v. TAD Sys. Tech. Inc.*,
No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009).................15, 16

*TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*,
No. 16-CV-1489 (DLI)(PK), 2018 WL 7076022 (E.D.N.Y. Mar. 9, 2018)....9

*Urbont v. Sony Music Ent.*,
831 F.3d 80 (2d Cir. 2016)....9, 10

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012)....20

**Statutes**

17 U.S.C. § 101....10

17 U.S.C. § 104(b)....10

17 U.S.C. § 106....11, 12

17 U.S.C. § 401(c)....10

17 U.S.C. § 411(a)....10

17 U.S.C. § 412(2)....3, 12

17 U.S.C. § 501(b)....9

17 U.S.C. §§ 502 *et seq*....1, 18

17 U.S.C. §§ 504 *et seq*....1, 3, 12

17 U.S.C. § 505....18

**Other Authorities**

Fed. R. Civ. P. 55 *et seq*....1, 8

Local Civil Rule 55.2(b)....1

Plaintiff DISH Network L.L.C. ("DISH") respectfully submits this memorandum of law in support of its motion for default judgment and a permanent injunction against Defendants Idriss Elkasmi ("Elkasmi") and Makrem Salem ("Salem") (together, "Defendants") pursuant to 17 U.S.C. § 502, Fed. R. Civ. P. 55(b)(2), and Local Civil Rule 55.2(b), and for an award of **$21,150,000** in statutory damages pursuant to 17 U.S.C. § 504(c), jointly and severally against both Defendants.

## PRELIMINARY STATEMENT

This copyright infringement lawsuit is the culmination of DISH's five-year investigation into a pirate television service called DMTN IPTV (the "Infringing Service"), which is managed and operated by Elkasmi and Salem. Defendants infringe DISH's copyrights on a massive scale by unlawfully transmitting and publicly performing in the United States certain television channels (and the copyrighted programs on those channels) that are—or were during the relevant period—exclusively licensed to DISH in the United States. Defendants are able to offer this programming at a fraction of the price charged by DISH because—unlike DISH—Defendants do not pay any license fees to the copyright owners. They seek to evade enforcement of U.S. copyright laws by working from secret locations in Morocco and Tunisia, using an array of constantly changing servers, and operating through fictitious shell companies with names like "Genuine Leather" and "VPS Designs."

Defendants' infringement of DISH's copyrighted television programming is egregious and willful. Even after receiving ***sixty-eight cease-and-desist notices*** from DISH, Defendants defiantly continued streaming DISH's copyrighted television programs to Defendants' customers in the United States on a continuous basis, seven days a week, twenty-four hours a day. Indeed, Defendants' infringement has continued unabated, even after they each personally acknowledged to DISH that they had received the Amended Complaint in this lawsuit. Without intervention from

this Court in the form of a permanent injunction and substantial monetary damages, Defendants are certain to continue their illegal scheme with impunity.

In prior cases against similar infringers, courts have entered default judgment and awarded maximum statutory damages. *See, e.g.*, *DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-CV-5730-AMD-RML, 2024 WL 1092498, at *1–2 (E.D.N.Y. Mar. 13, 2024) (awarding maximum statutory damages of $150,000 per work, totaling $26,850,000); *DISH Network L.L.C. v. Kumar*, No. 21-CV-6730(JPO), 2022 WL 5108085, at *2–3 (S.D.N.Y. Oct. 4, 2022) (awarding $150,000 per work, totaling $26,550,000). *See also DISH Network L.L.C. v. Khalid*, Civil Action H-19-4563, 2021 WL 765709, at *7–8 (S.D. Tex. Feb. 23, 2021) (awarding $150,000 per work, totaling $16,800,000). Maximum statutory damages and a permanent injunction are warranted here as well.

DISH's motion should be granted.

## FACTUAL BACKGROUND

### A. The Parties

DISH is the fourth largest pay-television provider in the United States, providing copyrighted programming to millions of subscribers nationwide. *See* Amended Complaint, Dkt. 15 ("Am. Compl.") ¶ 19.

Elkasmi is a citizen of Morocco and resides in Fes, Morocco. *Id.* ¶ 11. Salem is a citizen of Tunisia and resides in Chebba, Tunisia. *Id.* ¶ 12.

### B. DISH's Copyrights

DISH enters into license agreements with the networks that own the international channels distributed on DISH's platform. *Id.* ¶ 20. These channels include: Al Hayah 1 (aka Al Hayat 1); ART Aflam 1; ART Aflam 2; ART Cima; ATN Bangla; ATN News; B4U Movies; CBC; CBC Drama; Hekayat; LBC; LBCI (aka LDC); Melody Aflam; Melody Classic; NTV Bangla; SAB;

Sahara One; Sahara Samay; SET Max; SET (aka Sony SET); Times Now; and Zoom (collectively, the "Protected Channels"). *Id.* ¶ 21. Pursuant to DISH's license agreements with the networks that own these channels, DISH had the exclusive rights to distribute and publicly perform the Protected Channels in the United States, including the copyrighted works that air on those channels (the "Works") by means including satellite, OTT, IPTV, and the internet at all times relevant to this lawsuit. *Id.* ¶ 22.[1]

The Amended Complaint identifies 141 of the Works (the "Registered Works") that have been registered with the U.S. Copyright Office. *Id.* Ex. 1.; ¶ 22. Since each Registered Work was registered within three months after the first publication of the work (*id.*), infringement of each Registered Work is eligible for a separate award of statutory damages. 17 U.S.C. §§ 412(2), 504(c). There are also a vast number of other programs that aired on the Protected Channels whose episodes are each copyrighted programs to which DISH holds or held exclusive distribution and public performance rights and for which not all episodes have been registered with the U.S. Copyright Office. Am. Compl. ¶ 23.

### C. The Infringing Service

The Infringing Service transmits and publicly performs the Protected Channels to Defendants' customers in the United States (the "Service Users") on a continuous basis from servers maintained and operated by Defendants. *Id.* ¶¶ 25–26. Once a Service User purchases a subscription to the Infringing Service from Defendants, Defendants provide that Service User with

[1] As stated in the Amended Complaint, DISH's exclusive rights as to the Protected Channels are currently in effect, with the exception of certain channels for which DISH's exclusive rights expired on November 29, 2023 (Al Hayah 1; ART Aflam 1; ART Aflam 2; ART Cima; Hekayat; LBC; and LBCI); certain channels for which DISH's exclusive rights expired on February 7, 2024 (ATN Bangla and ATN News); and certain channels for which DISH's exclusive rights expired on April 3, 2024 (Sony SET, and SAB). Am. Compl. ¶ 22 n.5.

credentials that the Service User can then use to access the Infringing Service over the internet, using their home computer, portable device, or an Android-based set-top box. *Id.* ¶ 27.

Defendants promote the Infringing Service through an array of websites and social media platforms. *Id.* ¶ 28. At various times, Defendants have advertised that the Infringing Service provides "best in class quality," compatibility with multiple types of devices, and "13000+channels." *Id.* ¶ 29. Another of Defendants' websites touted the Infringing Service as "the #1 Recommended IPTV provider. . . . [w]ith more than 20K Live channels from around the world." *Id.* ¶ 31. An earlier version of Defendants' website for the Infringing Service candidly admitted that IPTV services "may offer unauthorized or pirated material, which is illegal in many countries." *Id.*

Since Defendants do not pay license fees for the content they provide, they seek to attract new customers by promising "No More Expensive Cable Bills," and offering customers in the United States a 12-month subscription for just $85. *Id.* ¶ 3. Though Defendants briefly disabled their website after DISH commenced this lawsuit, they soon launched a new website to promote and sell the Infringing Service, with new features. *See* DMTN IPTV https://dmtn8k.com/ (last visited Nov. 11, 2026). They even launched a new app. According to Defendants' website, "[t]he DMTN IPTV app is an Android media application . . . . [that] offers an organized interface for navigating the live channels, movies and series available with the selected subscription package."[2]

DISH investigators have confirmed that—as of the filing of this motion—the Infringing Service continues to operate, publicly performing the Protected Channels in the United States, twenty-four hours per day, seven days per week. Duval Decl. ¶ 7.

[2] *See* https://dmtn8k.com/dmtn-iptv-app/

### D. DISH's Investigation

Throughout the course of DISH's five-year investigation, its investigators engaged directly with Defendants to purchase seven subscriptions to the Infringing Service. Am. Compl. ¶¶ 35-45. As part of every transaction, DISH investigators (using various aliases) sent money to Defendants, and the Defendants sent the investigators credentials that were then used to access the Protected Channels through the Infringing Service. *Id.* In every one of these transactions, Defendants took steps that evidenced their awareness that they were breaking the law. For example, during a 2020 sale, Defendants sent a purchase confirmation to DISH's investigators, stating that they had "changed" the name of the Infringing Service on the receipt to avoid "any Bank problems" (*i.e.*, to evade bank detection processes that might flag illegal activity):




*Id.* ¶ 36. After a 2022 purchase of the Infringing Service, Defendants sent a sales receipt to DISH's investigators that falsely purported to be from a company called "vps designs." *Id.* ¶ 39. By 2025, Defendant Elkasmi was taking the lead in communicating with Service Users using his personal WhatsApp account. *Id.* ¶¶ 43-45. For two different purchases, Elkasmi sent WhatsApp messages to DISH investigators, directing them to make payment. *Id.* Once the payment was made, the

investigators received sales receipts falsely stating that they had purchased a "Philos Brown Leather BackPack" from a retailer called "Genuine Leather." *Id.* ¶¶ 44-45. In each instance, Elkasmi personally sent DISH investigators the credentials that were then used to access the Infringing Service and the Protected Channels from computers registered in this District. *Id.*

**E. Defendants' Willfulness and Actual Knowledge of Infringement**

As stated above, Defendants have defiantly continued to operate the Infringing Service, with actual knowledge that their activities infringe DISH's Copyrights. Between October 2021 and October 2025, Defendants received sixty-eight cease-and-desist notices from DISH, each demanding that Defendants stop infringing DISH's exclusive rights to publicly perform the Protected Channels in the United States. *See* Duval Decl. Ex. A (copies of cease-and-desist notices). DISH also sent 435 take-down notices to hosting companies used by Defendants in connection with the Infringing Service and to other third parties that host or otherwise enable Defendants' infringing activity. Am. Compl. ¶ 47. Even when these hosting companies removed the unauthorized content, Defendants intentionally interfered with the takedown efforts by, for example, transmitting the Infringing Service from different hosting companies or locations and by creating new websites to market the Infringing Service after their previously used domains were disabled. *Id.* ¶ 48. One such hosting company identified Salem as the individual account owner managing the Infringing Service's server. Duval Decl. ¶ 6.

Even after acknowledging to DISH's counsel that they had been served with DISH's Amended Complaint, Rich Decl. ¶ 9, Defendants have continued to manage and operate the Infringing Service, streaming the Protected Channels to Service Users on a continuous basis.

As alleged in the Amended Complaint, Defendant Elkasmi has gone to particularly notable lengths in trying to conceal his identity and evade the legal consequences for his actions. For

example, in November 2025, soon after DISH sent out warnings that it was about to commence this litigation, Elkasmi suddenly switched the profile photo on his Facebook page:

**October 2025:**




**November 2025:**




Am. Compl. ¶ 50. The new photo used by Defendant Elkasmi is in fact an image of a famous Hollywood director named Vince Gilligan, who gained notoriety as the creator of a popular television show called “Breaking Bad,” as well as its spinoff, “Better Call Saul.”[3] The exact same image appears on Mr. Gilligan’s IMDB page.[4] There is no evidence to suggest that Mr. Gilligan has any connection whatsoever to Elkasmi or the Infringing Service.

### F. This Lawsuit

DISH commenced this lawsuit on February 17, 2026, Dkt. 1, and amended its complaint on March 20, 2026, Dkt. 15. The Amended Complaint asserts a claim against Elkasmi and Salem for direct copyright infringement, and against two other named defendants—Ali Ezzaary and Bouziane El Harchaoui—for secondary copyright infringement.[5] Pursuant to the Court’s Order granting leave to serve Defendants by RPost registered email, DISH served the Amended Complaint on Elkasmi and Salem on June 25, 2026. Both of the Defendants personally responded

---

[3] *See Vince Gilligan Biography*, IMDB, https://www.imdb.com/name/nm0319213/?ref_=mv_desc (last visited Oct. 29, 2026).

[4] IMDB, *supra* note 3.

[5] If the Court grants this motion, DISH intends to voluntarily dismiss the remainder of its claims against the other defendants.

to DISH's counsel, acknowledging receipt of the Amended Complaint, yet they failed to timely respond to the Amended Complaint. Rich Decl. ¶¶ 9, 10. The Clerk of Court certified Defendants' default on August 14, 2026. *See* Rich Decl. Ex. B.

## ARGUMENT

## I. DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS

### A. Standard for Default Judgment

"Entry of a default judgment is appropriate when 'the adversary process has been halted because of an essentially unresponsive party.'" *Cadlerock Joint Venture, L.P. v. Prado*, No. 07-CV-1207 (JS)(WDW), 2008 WL 4561611, at *2 (E.D.N.Y. Oct. 7, 2008) (citation omitted). Following a default, all factual allegations of the complaint, except those pertaining to the amount of damages, must be accepted as true. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993). In other words, a party's default is deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006).

> Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment.

*Langenberg v. Sofair*, No. 03 Civ. 8339(KMK) (FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006) (citation and internal quotation marks omitted).

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. *See Columbia Pictures Indus., Inc. v. Cap King*, No. 08-CV-4461, 2010 WL 1221457, at *1 (E.D.N.Y. Mar. 29, 2010). First, under Federal Rule of Civil Procedure 55(a), the clerk must enter a notation of default when a party has demonstrably failed to defend. Here, the Clerk of Court of this District has entered a default against Defendants. *See* Rich Decl. Ex. B.

Second, upon obtaining a clerk's notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

Pursuant to the Court's Individual Practices, DISH is submitting an attorney affidavit together with this motion that sets forth the legal and factual bases for subject matter jurisdiction and personal jurisdiction over Defendants. *See* Rich Decl. ¶¶ 3-4.

**B. Defendants Are Directly Liable for Copyright Infringement**

"To prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Urbont v. Sony Music Ent.*, 831 F.3d 80, 88 (2d Cir. 2016). The well-pled allegations in DISH's Amended Complaint establish both elements as to each of the Defendants.

1. <u>DISH's Ownership Interest Is Sufficiently Pleaded</u>

DISH pleads a *prima facie* claim under the Copyright Act by alleging that it owns valid copyrights (via exclusive licenses) in the Works (Am. Compl. ¶¶ 20-22), and that the Defendants infringed DISH's exclusive rights to publicly perform the Works (*id.* ¶¶ 2, 25-27, 35-53 ). As the exclusive licensee of these distribution and public performance rights, DISH has an ownership interest in these copyrights and is entitled to sue for infringement. *See* 17 U.S.C. § 501(b); *see also Davis v. Blige*, 505 F.3d 90, 99–100 n.10 (2d Cir. 2007) ("[E]xclusive licenses are recognized as a type of an ownership interest . . . . [and] [e]xclusive licensees may sue without joining the copyright owners.") (citations omitted). DISH's copyright ownership is therefore adequately pleaded, and since Defendants have defaulted, "this presumption of validity over Plaintiffs' copyrights remains unrebutted." *TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-CV-1489 (DLI)(PK), 2018 WL 7076022, at *4 (E.D.N.Y. Mar. 9, 2018) (granting DISH's motion for default judgment, finding that DISH established copyright ownership by pleading that it is a party to license agreements granting it exclusive rights to the infringed channels).

Moreover, the non-United States works at issue are plainly entitled to copyright protection. The Copyright Act provides protection to non-United States works if: "(1) on the date of first publication, one or more of the authors . . . is a national, domiciliary, or sovereign authority of a treaty party . . . ; or (2) the work is first published . . . in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b). The works that air on the Protected Channels were authored and first published abroad, in countries including Bangladesh, Brazil, Egypt, France, India, Italy, Japan, Lebanon, Pakistan, Poland, Qatar, and Saudi Arabia. Am. Compl. ¶ 56. These nations are each a party to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under § 104(b). 17 U.S.C. § 101; United States Copyright Office, Circular 38A, International Copyright Relations of the United States (Oct. 2026).[6] The works at issue thus satisfy the requirements of § 104(b) for protection under the Copyright Act.

DISH's copyrighted works need not be registered with the U.S. Copyright Office to be protected. Registration is only necessary for a "United States work." 17 U.S.C. § 411(a). A work first published in a foreign nation that is a treaty party is not a "United States work." *See id.* § 101 (defining the term as a work first published in the United States, simultaneously in the United States and another treaty party or parties, or in a foreign nation not a treaty party); *see also Chiykowski v. Goldner*, No. 19-cv-2272 (AJN), 2020 WL 2834225, at *2–3 (S.D.N.Y. May 31, 2020) (collecting cases); *supra* note 6. Nonetheless, 141 of the Works that were infringed by Defendants *are* registered with the U.S. Copyright Office, which creates a presumption as to ownership and validity. Am. Compl. Ex. 1; *see* 17 U.S.C. § 401(c); *Urbont*, 831 F.3d at 88–89 (timely obtained certificate of registration "constitutes prima facie evidence of the validity of the

[6] https://www.copyright.gov/circs/circ38a.pdf (last visited Nov 11, 2026)

copyright"). *See also* Rich Decl. Ex. C (printouts from the U.S. Copyright Office reflecting the registration of each Work). The first element of DISH's copyright infringement claim is sufficiently pleaded.

2. Defendants Directly Infringed DISH's Exclusive Rights

The second element of DISH's claim for copyright infringement requires "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The term "copying" means to violate one of the exclusive rights granted to copyright owners in 17 U.S.C. § 106, which include the right to distribute and publicly perform copyrighted material. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Here, DISH's Amended Complaint alleges that Defendants captured broadcasts or streams of the Protected Channels, transferred them to one or more internet servers that they controlled and maintained, and then transmitted the Protected Channels and the copyrighted programs on those Protected Channels to Service Users in the United States without authorization from DISH. Am. Compl. ¶¶ 8, 24, 26, 57. They do so on a continuous basis, seven days a week, twenty-four hours a day. *Id.* ¶¶ 2, 33, 53.

In addition, DISH's investigation has uncovered specific, additional steps taken by each Defendant to help manage and operate the Infringing Services. For example, a hosting company that maintained a server used by the Infringing Service to transmit the Infringing Service to Service Users identified Defendant Salem as the account owner. Duval Decl. ¶ 6. As to Defendant Elkasmi, he personally communicated with DISH investigators on three separate occasions to facilitate purchases of subscriptions to the Infringing Service, and Elkasmi personally provided the credentials used by DISH investigators to access the Infringing Service after he collected payments from them. Am. Compl. ¶¶ 42-45.

Taken together, these allegations establish that Defendants actively manage the Infringing

Service and directly infringed DISH's exclusive rights to publicly perform in the United States the Protected Channels and the Works. *See* 17 U.S.C. § 106. *See also DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21 CV 5730 (AMD)(RML), 2024 WL 708229, at *4 (E.D.N.Y. Jan. 3, 2024) (holding operators of a similar pirate television service liable for direct infringement of DISH's exclusive rights), *report and recommendation adopted*, 2024 WL 1092498.

## II. DISH SHOULD BE AWARDED MAXIMUM STATUTORY DAMAGES

DISH's Amended Complaint identifies 141 separate television episodes that have been registered with the U.S. Copyright Office and that Defendants have infringed. Am. Compl. Ex. 1; ¶ 22. *See also* Rich Decl. Ex. C. Since each Registered Work was registered within three months after the first publication of the work (*id.*), infringement of each Registered Work is eligible for a separate award of statutory damages. 17 U.S.C. §§ 412(2), 504(c).[7] The Copyright Act provides for statutory damages awards of up to $30,000 per work infringed in cases of non-willful infringement, and up to $150,000 per work infringed in cases of willful infringement. 17 U.S.C. § 504(c)(1)–(2). Given that Defendants' infringement here was willful, egregious, and carried out on a massive scale, the Court should award maximum statutory damages of $21,150,000 (*i.e.*, $150,000 x 141 Registered Works), jointly and severally against both Defendants.

Courts have "wide discretion" in determining the amount of statutory damages in a particular case. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). "Where a defendant's infringement is flagrant [as it most certainly is here], courts in the Second Circuit and elsewhere have granted plaintiffs large statutory damages awards for willful copyright

[7] These registered television episodes represent only a very small fraction of the works infringed because there are also a vast number of programs that aired on the Protected Channels, whose episodes are each copyrighted works to which DISH holds or held exclusive distribution and public performance rights and for which not all episodes have been registered with the United States Copyright Office. Am. Compl. ¶ 23 & Ex. 2.

infringement." *786 Wireless World*, 2024 WL 708229, at *6 ("Under the Copyright Act, enhanced statutory damages are appropriate to compensate plaintiffs and deter future willful infringement."). *See, e.g.*, *Kumar*, 2022 WL 5108085, at *2–3 (maximum statutory damages award for each of 177 works); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631–32 (S.D.N.Y. 2011) (awarding maximum statutory damages); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 475, 482 (S.D.N.Y. 2001) (awarding then-maximum statutory damages of $100,000 per work); *accord Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (affirming $31.68 million statutory damages award); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946–47 (9th Cir. 2011) (affirming maximum statutory damages).

The factors considered by courts to determine the amount of statutory damages in copyright infringement cases include: (i) expenses saved and profits reaped by defendant; (ii) revenues lost by plaintiff; (iii) value of the copyright; (iv) deterrent effect on other infringers besides the defendant; (v) whether the defendant's conduct was innocent or willful; (vi) whether a defendant has cooperated in providing records from which to assess the revenue from infringement; and (vii) the potential for deterring the defendant. *See Fitzgerald Publ'g*, 807 F.2d at 1117.

Each factor supports an award of maximum statutory damages here.

**A. Defendants' Infringement Was Indisputably Willful**

Willfulness '"means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.'" *Nat'l Football League*, 131 F. Supp. 2d at 475 (citation omitted). Where a defendant has defaulted, the Court may infer willfulness on that ground alone. *See Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default."); *Hounddog Prods.*, 826 F.

Supp. 2d at 631–32 (inferring willfulness from default and awarding maximum statutory damages).

Moreover, it is well-established that continued infringement after receipt of a cease-and-desist notice is sufficient to support a finding of willfulness. *See DISH Network L.L.C. v. Massive Wireless, Inc.*, 2026 WL 1674131, at *11 (E.D.N.Y. June 9, 2026) (citing *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013)). Here, Defendants continued to operate the Infringing Service, even after receiving ***sixty-eight*** cease-and-desist notices from DISH between 2021 and 2025, each one notifying Defendants that their public performance of the Protected Channels in the United States constituted infringement of DISH's exclusive rights. *Hounddog Prods.*, 826 F. Supp. 2d at 632 (awarding maximum statutory damages of $150,000 per work where defendant continued to distribute copyrighted material after receiving notice that it had no right to do so). Moreover, the fact that Defendants defiantly *continue* to operate the Infringing Service after acknowledging receipt of DISH's Amended Complaint in this lawsuit, *see* Duval Decl. ¶ 7, makes their conduct even more egregious.

### B. The Other Relevant Factors Favor Awarding Maximum Statutory Damages

#### 1. <u>Expenses Saved and Profits Reaped by Defendants</u>

DISH pays substantial fees to license the Protected Channels. Am. Compl. ¶¶ 20, 22. Defendants pay no license fees whatsoever. *Id.* ¶ 3. Accordingly, Defendants are able to reap enormous savings and lure customers by advertising prices far below those charged by DISH for its licensed services. *Id.*

Defendants—as a strategic tactic to avoid defending this action on the merits—have intentionally defaulted. "As a result, DISH does not know the full extent of [their] sales and profits and has no [readily] independent means of establishing that amount with any certainty." *786 Wireless World*, 2024 WL 708229, at *6. "Courts regularly award maximum statutory damages

in such situations." *Id.* (awarding statutory damages of $150,000 per work). *See also Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780, at *6 (E.D.N.Y. Sept. 10, 2009) ("Because of Defendants' default in this matter, the Court has almost no evidence to adjudge the" amount of actual damages; "[y]et, the failure to establish actual damages does not impair this Court's ability to devise a proper statutory award;" awarding statutory maximum of $150,000 per work infringed).[8] "Courts have awarded maximum statutory damages even in the context of a default where the Court has little to no evidence of defendants' profits." *Asia TV USA Ltd. v. Kamran Int'l Trade Ltd.*, No. 17-cv-5057 (FB), 2018 WL 6313215, at *8 (E.D.N.Y. Sept. 25, 2018) (citing *Tu*, 2009 WL 2905780, at *6), *report and recommendation adopted*, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018).

2. <u>DISH's Losses</u>

"Each consumer who purchases access to the Protected Channels from the Service rather than DISH contributes to a depletion of DISH's revenues." *DISH Network, L.L.C. v. Dima Furniture*, No. TDC-17-3817, 2019 WL 2498224, at *5 (D. Md. June 17, 2019) (awarding maximum statutory damages against secondary infringers of DISH's copyrights), *report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019). These losses include lost market share, lost subscription revenues, lost advertising revenues, and price erosion for legitimate services. Am. Compl. ¶ 4. The Infringing Service also disrupts DISH's relationships with authorized distributors in the United States, deprives DISH of its exclusive rights to control the distribution and quality of its copyrighted television programming, interferes with DISH's ability

[8] *See also Agence Fr. Presse v. Morel*, No. 10–cv–2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("In the context of the Copyright Act, it is clear that statutory damages can be awarded even in the absence of sufficient evidence supporting actual damages." (citation omitted)).

to develop a lawful market for television programming in the United States, and damages DISH's business reputation and goodwill. *Id.*

3. Value of the Copyrights

Through a series of license agreements, DISH has the exclusive right to distribute and publicly perform the Protected Channels in the United States. Am. Compl. ¶¶ 20, 22, 55. In a similar case brought by DISH against a pirate television service, the court found that the value of the copyrighted works on those channels is "inestimable," and that the defendants' extensive efforts to continue providing unauthorized access to DISH's copyrighted works makes clear that there is a significant audience for that content. *786 Wireless World*, 2024 WL 708229, at *8.

4. Deterrent Effect on Defendants and Other Infringers

"Statutory damages serve an important deterrent purpose, and 'the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it.'" *786 Wireless World*, 2024 WL 708229, at *7 (quoting *Stevens v. Aeonian Press, Inc.*, No. 00 Civ. 6330(JSM), 2002 WL 31387224, at *1 (S.D.N.Y. Oct. 23, 2002)); *see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, No. 89 Civ. 6082RWS (KAR), 1991 WL 113283, at *4 (S.D.N.Y. June 14, 1991), *aff'd*, 954 F.2d 847 (2d Cir. 1992).

Defendants do not merely infringe a television episode or two; they literally pirate all of the Protected Channels by illegally streaming the Works continuously, twenty-four hours a day, seven days a week. *Massive Wireless*, 2026, WL 1674131, at *2; Am. Compl. ¶¶ 2, 53. "This is exactly the sort of large scale, illegal enterprise that courts seek to deter through significant statutory damages awards." *786 Wireless World*, 2024 WL 708229, at *7. *See Tu*, 2009 WL 2905780, at *6 ("[A]ward of the enhanced statutory maximum is appropriate and reasonable to compensate Plaintiffs and to deter Defendants and future infringers."); *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 197–98 (S.D.N.Y. 2016) (enlarging statutory damage award to

deter future conduct and in response to considerable evidence that defendants willfully infringed plaintiffs' copyrights by, among other things, disregarding multiple demand letters).

5. <u>Defendants Failed to Provide Records</u>

Defendants intentionally defaulted as a strategic tactic to avoid defending this action on the merits. By their failure to appear, Defendants have also robbed DISH of its right to document discovery, including documents reflecting Defendants' sales, the identity of their suppliers, manufacturers, and agents, and their affiliation with other potential infringers of DISH's copyrighted content. Defendants have thus doubly harmed DISH: First, by engaging in massive infringement of DISH's exclusive rights, and second, by hobbling DISH's ability to investigate and pursue a larger copyright protection program. This leaves DISH with the sole available remedies of a substantial statutory damages award and (as discussed below) a permanent injunction.

**C. Damages Sought in This Case**

In its Amended Complaint, DISH enumerated 141 separate works that are registered with the U.S. Copyright Office and that Defendants have infringed. Am. Compl. Ex. 1, ¶ 22. Based on the above discussed aggravating factors, and in particular the continued and comprehensive nature of the infringement, the Court is well within its discretionary authority to award the maximum statutory damages of $150,000 per registered work infringed by Defendants' flagrantly willful infringement. Again, these 141 infringed works represent only a small fraction of the works airing on the Protected Channels and of Defendants' massive infringement of DISH's exclusive rights. As stated above, the Infringing Service illegally streams the entirety of the Protected Channels, and the individual copyrighted television episodes that appear on those channels, twenty-four hours a day, seven days a week. Am. Compl. ¶¶ 2, 53. They did so for years, and they continue to this day.

Under these circumstances, an award of $150,000 per work—for a total of **$21,150,000**—is entirely warranted and appropriate. Notably, DISH is not seeking an award of its attorneys' fees and costs, which it is entitled to do as the prevailing party under 17 U.S.C. § 505. Nor is it seeking damages for the unregistered works set forth in Exhibit 2 to the Amended Complaint.

## III. DISH IS ENTITLED TO A PERMANENT INJUNCTION

In addition to the foregoing relief, DISH respectfully requests entry of a permanent injunction enjoining Defendants and third parties working in concert with them from further infringement. The Copyright Act provides that a federal court has the power to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

In support of this motion, DISH has identified specific third parties that provide services used to operate the Infringing Service, including hosting the servers that transmit the Protected Channels and maintaining the website domains used to promote the Infringing Service. *See* Duval Decl. ¶¶ 9-11. To effectively shut down the Infringing Service and stop its rampant infringement of DISH's copyrighted TV programming, it is essential that these and other third parties who provide such services be enjoined together with Defendants. *See, e.g.*, *DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-CV-5730-AMD-RML, Dkt. 64 (E.D.N.Y. Mar. 13, 2024) (including relevant third parties in injunction against pirate television service, including host providers and domain registrars); *DISH Network L.L.C. v. Kumar*, No. 21-CV-6730 (JPO), 2022 WL 5108085, at ¶ 18 (S.D.N.Y. Oct. 4, 2022) (enjoining third party service providers "who provide services used in in connection with [pirate television service] . . . including but not limited to: back-end service providers; service providers routing traffic or providing bandwidth; content delivery networks; domain name server systems; content hosting websites").

To obtain a permanent injunction, a plaintiff must show the following: (1) an irreparable injury; (2) the inadequacy of remedies available at law, such as monetary damages; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). These "*eBay* factors" weigh in favor of issuing the requested injunction.

**A. DISH Has Suffered Irreparable Injury**

"Based on the fact that proving the loss of sales due to infringement is . . . notoriously difficult, irreparable harm has been readily found in copyright infringement cases." *Massive Wireless*, 2026 WL 1674131, at *11 (citation and internal quotation marks omitted). Here, the well-pled allegations in the Amended Complaint establish that Defendants willfully infringed DISH's exclusive rights to publicly perform the Protected Channels and the Works in the United States. Am. Compl. ¶¶ 25-32, 46-53, 57, 58. By doing so, Defendants' conduct irreparably harms DISH in numerous ways.

The Infringing Service directly competes with authorized subscriptions to DISH's television programming, thereby causing lost market share, lost subscription revenues, lost advertising revenues, and price erosion for legitimate services. Am. Compl. ¶ 4. The Infringing Service also disrupts DISH's relationships with authorized distributors in the United States, deprives DISH of its exclusive rights to control the distribution and quality of its copyrighted television programming, interferes with DISH's ability to develop a lawful market for television programming in the United States, and damages DISH's business reputation and goodwill. *Id.* These are precisely the types of harms that justify entry of an injunction. *See, e.g.*, *Massive Wireless*, 2026 WL 1674131, at *11. Moreover, given Defendants' strategic default in this matter, they will likely attempt to evade paying any money judgment. These facts further support a finding

of irreparable harm. *See, e.g.*, *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285–87 (2d Cir. 2012) (infringing internet streaming of plaintiffs' TV programming constituted irreparable harm since (i) that streaming would substantially diminish the programming's value, (ii) the plaintiffs' losses were difficult to measure and monetary damages were insufficient to remedy the harms, and (iii) the defendant would have been unable to pay damages). Absent a permanent injunction, DISH is likely to continue to be harmed in the future.

### B. The Balance of Hardships and Public Interest Favor an Injunction

As explained above, the harm to DISH is irreparable. On the other hand, requiring the Defendants to cease infringing DISH's exclusive rights in copyrighted television programming will not harm the Defendants because they have no legitimate interest in continuing this infringement. *See, e.g.*, *Dima Furniture*, 2019 WL 2498224, at *7 ("[T]he harm that a business will suffer if it is required to cease violating the Copyright Act is not entitled to any weight in the balancing of hardships.") (citing *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983)). Further, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming." *WPIX*, 691 F.3d at 287. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections . . . ." *Apple Comput.*, 714 F.2d at 1255 (citation omitted). The proposed permanent injunction provided as Exhibit F to the Rich Declaration should be entered.

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court grant default judgment against Defendants and in favor of DISH, award DISH statutory damages in the amount of **$21,150,000**, and enter a permanent injunction against Defendants. DISH submits a proposed

judgment and injunction together with this motion, which is attached as Exhibit F to the accompanying Declaration of Adam I. Rich.

Dated: November 13, 2026

Respectfully submitted,

By: /s/ *Robert D. Balin*

DAVIS WRIGHT TREMAINE LLP
Robert D. Balin
Adam I. Rich
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
Tel. 212.489.8230
Email: robbalin@dwt.com
adamrich@dwt.com

*Attorneys for Plaintiff DISH Network L.L.C.*

**CERTIFICATION AS TO WORD COUNT**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this brief contains 6,100 words.

Dated: November 13, 2026

*/s/ Adam I. Rich*
Adam I. Rich